UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SANJAY TRIPATHY,

                              Plaintiff,                    DECISION AND ORDER

v.                                                 Case # 6:22-cv-06469-FPG

RYAN BROTZ, et al.,

                              Defendants.
_____

## INTRODUCTION

Plaintiff Sanjay Tripathy, proceeding *pro se*, brings claims under 42 U.S.C. §§ 1983 and 1985; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961; and the New York False Claims Act ("NYFCA"), State Finance Law, §§187-194, against Anthony Annucci, Jeff McKoy, New York Department of Corrections and Community Services ("DOCCS") Deputy Commissioner of Programs, and Brian McCallister, Director of the DOCCS Sex Offender Counseling and Treatment Program ("SOCTP") and Dr. Ryan Brotz, the SOCTP psychologist for Collins Correctional Facility ("Collins").

Plaintiff was previously incarcerated at Fishkill Correctional Facility and then transferred to Collins prior to being released on his own recognizance on November 23, 2022 after his conviction was vacated. Plaintiff alleges his statutory and constitutional rights were violated by Defendants' administration of the SOCTP at Collins, and Defendants retaliated against him for bringing this lawsuit challenging the program.

Before the Court is Defendants' motion to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim. For the reasons set forth below, the motion to dismiss is GRANTED.

**BACKGROUND**

On May 30, 2018, a jury convicted Plaintiff of criminal sexual act in the first degree, sexual abuse in the first degree, and related offenses in New York State Supreme Court, New York County, and the court thereafter sentenced him to seven years' imprisonment. His conviction was affirmed by the Appellate Division, First Department, and the Court of Appeals denied leave to appeal. On November 22, 2022, Plaintiff's judgment of conviction was vacated pursuant to CPL § 440.10 and was released on his own recognizance pending a new trial.

Plaintiff began this lawsuit in June 2021 while incarcerated at the Fishkill Correctional Facility. Plaintiff was transferred to Collins in October 2021, and in January 2022, Plaintiff amended his complaint to name Dr. Brotz as a Defendant in this action. According to Plaintiff, Dr. Brotz, the psychologist responsible for administering the SOCTP at Collins, repeatedly infringed plaintiff's statutory and constitutional rights. Plaintiff alleges Dr. Brotz rejected his requests to participate in the SOCTP without having to lie. He also claims Dr. Brotz improperly "overrode" an initial assessment that found Plaintiff belonged in a "low-risk" tier of the SOCTP, and decided the nature of Plaintiff's crimes instead warranted placement in the longer, "moderate-risk" tier. Finally, Plaintiff contends Dr. Brotz retaliated against him for objecting to her conduct via letters, grievances, and the instant lawsuit, by charging Plaintiff with disciplinary infractions.

Plaintiff seeks monetary damages, as well as a declaratory judgment that Defendants violated his constitutional and statutory rights.

**LEGAL STANDARD**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When addressing a motion to dismiss, a district court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

## DISCUSSION

### I.    RLUIPA

Plaintiff complains that his religious faith was substantially burdened by the Defendants during his participation in the SOCTP while incarcerated at Collins. As redress for this alleged infringement upon his religious exercise, Plaintiff brings a claim under RLUIPA seeking monetary damages against Defendants, as well as injunctive and declaratory relief.

A person's "transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006); *see* ECF No. 69. However, there are exceptional situations, where review would be required if "(1) the plaintiff [has] a reasonable expectation that [they] will be subject to the same challenged action again, and (2) the challenged conduct [is] of too short a duration to be fully litigated before its cessation." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 395 (2d Cir. 2022).

Plaintiff was released from DOCCS custody as of November 23, 2022, and therefore, his claims for injunctive and declaratory relief are moot. Further, since Plaintiff does not allege that he anticipates being subjected to SOCTP again in the future,[1] there is no "demonstrated probability of recurrence." *Id.* Accordingly, Plaintiff's claims for injunctive and declaratory relief are moot without exception.

---

[1] Although Plaintiff awaits a new trial, he maintains his innocence and confidence that he will be exonerated. Accordingly, an assertion that he would be subject to SOCTP anew would be inconsistent with the position he maintains regarding his innocence.

Moreover, "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (citing *Washington v. Gonyea*, 731 F.3d 143, 145–46 (2d Cir.2013) (per curiam)); *see also Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Plaintiff's claims for monetary damages are, therefore, not cognizable.

Because Plaintiff's claims for injunctive and declaratory relief under RLUIPA are moot without exception and Plaintiff's claims for monetary damages are not cognizable, all of Plaintiff's claims under RLUIPA are dismissed.

## II.     Free Exercise

Plaintiff claims to be a "life-long Hindu" who believes that one of "Hinduisms core tenets . . . is to neither lie, provide untrue facts, commit perjury or falsity . . . in conduct of one's life, interactions and spiritual journey." ECF No. 52 at 12. Plaintiff alleges that his Hindu faith was substantially burdened during his participation in SOCTP because SOCTP required Plaintiff to:

> "openly and honestly discuss the behavior that resulted in [his] incarceration and referral to the program, demonstrate acceptance of responsibility for the conduct that resulted in [his] criminal conviction, and demonstrate an understanding of [his] sexual offending behavior and cycle of abuse."

*Id.* at 13 (quoting letter response from Defendant McKoy regarding requirements of the SOCTP). Plaintiff alleges that these program requirements substantially burden his Hindu faith because he is "an innocent man illegally incarcerated," ECF No. 52 at 1, and "accept[ing] responsibility for the (alleged) sexual assault is clearly a lie (untrue fact, falsity, perjury)." *Id.* at 14.

Arising from these facts, Plaintiff brings claims against Defendants for monetary damages as well as injunctive and declaratory relief under the Free Exercise clause of the First Amendment. As discussed, *supra*, as a consequence of Plaintiff's release from DOCCS custody, Plaintiff's equitable claims are moot. To the extent he seeks prospective injunctive relief if he is convicted

4

anew following the new trial, such a claim is unripe for determination because Plaintiff may not be returned to Collins to participate in the SOCTP with these Defendants. Plaintiff's claims would not evade review as he could file a new claim should he be returned to a correctional facility in the future. The Court will, therefore, only consider the claim for monetary damages against Defendants in their individual capacities.[2]

To state a free exercise claim under the First Amendment, "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006). "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct," although "the burden remains with the prisoner to show that these articulated concerns were irrational." *Id.*

At this stage of the litigation, where Defendants have challenged, under Rule 12(b)(6), Plaintiff's pleading of his free exercise claims, the Court need not address whether Defendants may be able to make an adequate showing of a "legitimate penological interest" for their alleged conduct. *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 264 (S.D.N.Y. 2014) ("This being a motion to dismiss, Defendants have not answered, and so have not yet articulated any "legitimate penological interest" or "compelling state interest" that would justify the alleged "substantial burden" on Plaintiffs' sincerely held religious beliefs under the Free Exercise Clause."). Rather, the Court need only consider Defendants' contention that, on its face, the Amended Complaint does not sufficiently plead that Defendants imposed a "substantial burden" on Plaintiff's exercise of his Hindu faith.

---

[2] Plaintiff also brings claims for monetary damages against Defendants in their official capacities, but those claims are not cognizable because the Eleventh Amendment precludes suits against state officials in their official capacities. *Davis v. New York*, 316 F.3d 93, 101–02 (2d Cir. 2002).

### A. Substantial Burden

A substantial burden on religious exercise exists "when an inmate is required to choose between following the precepts of her religion and forfeiting benefits on the one hand, and abandoning one of the precepts of her religion … on the other hand," in order to obtain the benefits. *Smith v. Goord*, 541 F. App'x 133, 134 (2d Cir. 2013) (summary order). In other words, a "substantial burden" need not involve the prohibition of religious practice (as in, for example, prohibiting attendance at a religious service). Rather, coercive conduct that, directly or indirectly, tends to force the individual to restrict the practice of his religion may well be sufficient. *See, e.g., Westchester Day Sch.*, 504 F.3d 338, 348 (2d Cir. 2007) (noting that a substantial burden will be found where, by denying benefits, "the state puts undue pressure on the adherents [of a religious belief] to alter their behavior and to violate their beliefs in order to obtain government benefits") (citing *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 709 (1981)); *accord Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir.1996).

Since, according to Plaintiff "accept[ing] responsibility for the (alleged) sexual assault," would be lying, and lying violates his religious beliefs, he was faced with the choosing between: (1) following his religion—not lying—and losing "benefits . . . including good time credits (go home earliest release date of 5/15/2024], lowest possible SORA registration level with minimal parole supervision conditions, and avoidance of potential civil confinement," on the one hand, ECF No. 52 at 13, and (2) abandoning the precepts of his religion in order to obtain the benefits of SOCTP on the other hand. Accordingly, Plaintiff has sufficiently alleged a substantial burden on his religious exercise.

### B. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal [pursuant to Rule 12(b)(6)] before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"In making this determination, we consider Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct." *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) (per curiam). The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken," *Pearson*, 555 U.S. at 244.

It is not "clearly established," either in the Second Circuit or elsewhere, that the "acceptance of responsibility" requirement of the SOCTP violates Plaintiff's right to free exercise of religion. Other circuits have found that similarly situated defendants are entitled to qualified immunity for similar free exercise claims related to inmate sexual offender treatment programs. *See Hydrick v. Hunter*, 500 F.3d 978, 992 (9th Cir. 2007), *judgment vacated on other grounds*, *Hunter v. Hydrick*, 556 U.S. 1256 (2009) ("To the extent that the claim relies on a First Amendment right not to participate in treatment sessions, the Defendants have qualified immunity, because the law on this point is not clearly established."); *Aruanno v. Spagnuolo*, 292 F. App'x. 184, 187, 2008 WL 2746229, *2 (3d Cir. 2008) ("[E]ven if we were to conclude that Aruanno had a right to refrain from disclosing his past sexual history and we have not so concluded, we could

not hold that the right is clearly established under the First Amendment [right to refrain from speaking], and that it was one of which defendants should have been aware."). Similarly, another court in this district also found that defendants facing identical claims were entitled to qualified immunity. *See Bush v. Goord*, No. 03-CV-759S, 2009 WL 790358, at *9 (W.D.N.Y. Mar. 25, 2009). Accordingly, because Plaintiff's free exercise claim is not clearly established under Second Circuit or Supreme Court precedent, Defendants here are entitled to qualified immunity on Plaintiff's free exercise claim. Accordingly, Plaintiff's free exercise claims are dismissed.

## III.    Due Process

Plaintiff alleges that his procedural and substantive due process rights have been violated as a result of Defendants' decision to place him in the "moderate-risk SOCTP" rather than the "low-risk [SOCTP]." ECF No. 52 at 14. Plaintiff was placed in the moderate-risk SOCTP following a recommendation from Dr. Brotz. Plaintiff alleges that this risk determination was improper because Dr. Brotz increased his risk-level by relying on information in Plaintiff's Presentence Investigation Report, which Plaintiff disputes as incorrect. ECF No. 52 at 14-23. As a result of this due process violation, Plaintiff's SOCTP participation would last 12 months, instead of 6 months. *Id.* at 14.

### A.  Procedural Due Process Claim

The Fourteenth Amendment[3] prohibits the government from depriving citizens of life, liberty or property without due process of law. *See e.g., Wilkinson v. Austin*, 545 U.S. 209 (2005). To state a claim for procedural due process under the Fourteenth Amendment, Plaintiff must

---

[3] Plaintiff brings his procedural due process claim under both the Fifth and Fourteenth Amendments, but the Fifth Amendment Due Process Clause applies only to the federal government, and not to state or municipal governments. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law.").

demonstrate "(1) that Defendants deprived him of a cognizable interest in 'life, liberty, or property,' (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017).

Plaintiff's objection to the process employed in deciding to place him in the moderate-risk SOCTP does not assert any deprivation of a liberty interest. Rather, Plaintiff merely objects to the length of time that he must participate in the moderate-risk SOCTP, as opposed to the low-risk SOCTP, in order to obtain the benefits of SOCTP, including good time credits and conditions of parole supervision.

As a matter of first principles, inmates have no constitutional right to participate in prison programs which might expedite release. *Abed v. Armstrong*, 209 F.3d 63, 67 (2d Cir. 2000) (where good time credit is a discretionary matter, inmate has no liberty interest in the opportunity to earn good time credit); *see* N.Y. Correct. Law § 803 (outlining New York's discretionary good time credit program). Because inmates do not have a constitutional right to participate in programs that award good time credits, inmates cannot have a constitutional right to participate in one such program over another.

Additionally, according to Plaintiff, his earliest possible release date would have been May 15, 2024. ECF No. 52 at 13. Meanwhile, his participation in the moderate-risk SOCTP was scheduled to be completed sometime between July 31 and October 31, 2022. *Id.* at 9. Therefore, even if Plaintiff had asserted a liberty interest, no additional time would have been added to his term of imprisonment as a result of his participation in the longer SOCTP.

Accordingly, because Plaintiff does not have a protected liberty interest in participating in any SOCTP and his participation in the longer program did not extend the length of his sentence,

Plaintiff has not demonstrated a deprivation of a liberty interest and his due process claim relating to the decision to place him in the moderate-risk SOCTP is dismissed.

### B.  Substantive Due Process Claim

To demonstrate a violation of his substantive due process rights, Plaintiff must "identify the constitutional right at stake," and then "must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (quotation omitted).

Plaintiff asserts a constitutional right in obtaining liberty without being forced to participate in SOCTP. ECF No. 52 at 13.In other words, Plaintiff argues that he should be able to obtain good time credits that entitle him to parole without having to participate in the SOCTP. However, "prisoners do not have a protected liberty interest in parole where the relevant statutory scheme endows prison authorities with discretion over the decision whether to grant it." *Edwards v. Goord*, 362 F. App'x 195, 196 (2d Cir. 2010) (summary order) (citing *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001). Under New York law, good time credits "may be granted for . . . progress and achievement in an assigned treatment program," but "may [also] be withheld, forfeited or canceled in whole or in part for . . . failure to perform properly in the duties or program assigned." N.Y. Correct. Law § 803 (emphasis added). Thus, the award of good time credits that Plaintiff seeks was discretionary and not a constitutional right.

Because Plaintiff has not identified a constitutional right that was at stake, Plaintiff has not demonstrated a violation of his substantive due process rights. This claim is dismissed.

### IV.  Retaliation

Prisoner retaliation claims are approached "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

Plaintiff alleges that Defendants have retaliated against him because he filed the present lawsuit. He alleges the following six instances of retaliation: (1) receipt of an Inmate Counseling Notification from Dr. Brotz on December 30, 2022; [4] (2) receipt of an Inmate Misbehavior Report from Dr. Brotz on April 4, 2022; [5] (3) being subjected to a search of his cell on April 11, 2022; (4) having his cell moved involuntarily from D4 to D3 on April 19, 2022;[6] (5) receipt of a Behavioral Contract on May 6, 2022; and (6) that prison officials destroyed his grievance related to the April 4th Inmate Misbehavior Report.

To state a retaliation claim, a prisoner must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Fabricio v. Annucci*, 790 F. App'x 308, 311 (2d Cir. 2019) (summary order) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)).

Alleged adverse actions must be sufficiently adverse to "deter a similarly situated individual of ordinary firmness from exercising [his] constitutional rights," *Fabricio*, 790 F. App'x at 311 (quoting *Davis*, 320 F.3d at 353). However, "[p]risoners may be required to tolerate more

---

[4] Inmate Counseling Notification at ECF No. 52-6 at 2. Grievance Denial, *Id*. at 11.
[5] ECF No. 52-6 at 13. Plaintiff filed a grievance related thereto at ECF No. 52-6 at 14-16 (COL-0132-22). Plaintiff's grievance was dismissed at ECF No. 52-6 at 29 pursuant to Directive 440 Section 701.5(b)(4)(i)(c)(4) and 701.3(e)(2) ("an individual decision or disposition resulting from a disciplinary proceeding…is not grievable). Following an investigation, Plaintiff was found not guilty of the charged activity in the disciplinary ticket, rendering the disciplinary action not grievable. Plaintiff filed another grievance relating to the dismissal of the underlying grievance, and the response was the same at ECF No. 52-6 at 31.
[6] ECF No. 52-6 at 36.

than . . . average citizens, before a retaliatory action taken against them is considered adverse." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001) *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). To sufficiently allege a causal connection, Plaintiff's allegations must support an inference that the protected conduct was "a substantial or motivating factor for the adverse actions taken by prison officials." *Dorsey*, 468 F. App'x at 27 (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.2003).

In addressing the causal connection requirement, a court may consider the temporal proximity between the protected conduct and the alleged retaliatory act. *See Edwards v. Horn*, 2012 WL 760172, *17 (S.D.N.Y. 2012). However, "the temporal proximity must be very close," in order to support an inference of causality. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (collecting cases that demonstrate that a 3-month period between the protected activity and the adverse action is not close enough to infer causality).

The right to file a lawsuit is constitutionally protected, therefore, Plaintiff easily meets the first prong of the test with respect to each alleged act of retaliation. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("The right to petition government for redress of grievances—in both judicial and administrative forums—is among the most precious of the liberties safeguarded by the Bill of Rights."). The Court will, therefore, proceed in analyzing whether each instance of alleged retaliation includes an adverse action and whether Plaintiff has sufficiently alleged a causal connection between his protected speech and the alleged adverse action.

### A. Inmate Counseling Notification.

"Counseling sessions and counseling memos that do not place the employee in an 'active disciplinary process' do not constitute adverse employment actions 'as a matter of law.'" *Stallworth v. New York*, No. 16-CV-03059, 2017 WL 4355897, at *19 (S.D.N.Y. July 27, 2017),

report and recommendation adopted, No. 16CIV3059, 2017 WL 4342148 (S.D.N.Y. Sept. 28, 2017) (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011)). Although this alleged retaliation happened in the context of a prison and not employment, prisoners are expected "to tolerate more than . . . average citizens, before a retaliatory action taken against them is considered adverse." *Dawes*, 239 F.3d at 493. Therefore, if a counseling memo in the employment context does not constitute an adverse action, it certainly cannot constitute an adverse action in the prison context. Like *Stallworth*, the Inmate Counseling Notification that Plaintiff complains of here did not initiate an active disciplinary process, so it cannot constitute an adverse action.

Even if the Inmate Counseling Notification did constitute an adverse action, Plaintiff has not sufficiently alleged a causal connection because he does not allege facts that suggest that his lawsuit was a substantial motivating factor in Dr. Brotz's decision to issue the Inmate Counseling Notification. On the face of the counseling notification that Plaintiff attaches to his Amended Complaint, Dr. Brotz explained that the Plaintiff was told not to use Dr. Brotz's first name citing Public Officers Law 87(2)(f), but Plaintiff did so anyway. ECF No. 52-6 at 2. Therefore, on the record before this Court, it appears that a substantial motivating factor for issuing the counseling notification was Plaintiff's own insubordination.

While the counseling notification and the amendment of the lawsuit to name Dr. Brotz as a defendant are close in time, the counseling notification was issued first. The counseling memo was issued December 22, 2021, and then Plaintiff added Dr. Brotz as a defendant on January 3, 2022. Where the alleged adverse action takes place prior to the protected speech, a causal connection is not sufficiently alleged. *See Marrero v. Kirkpatrick*, No. 08-CV-6237, 2012 WL 2685143, at *5 (W.D.N.Y. July 6, 2012) ("[T]he counseling memo . . . was issued to Plaintiff *prior*

*to his filing the first formal grievance. . . .* Thus, Plaintiff has not shown a causal connection between the grievances he filed and the October 15th counseling memo."). Accordingly, Plaintiff has not sufficiently alleged a causal connection between his protected speech and the inmate counseling memo.

**B. Discipline Ticket**.

A misbehavior report issued in retaliation for an inmate's exercise of a protected activity may constitute an adverse action. *See Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under [Section] 1983."). Nevertheless, Plaintiff does not allege any facts from which an inference of causality could be made. Plaintiff's only argument is that these adverse actions took place after he filed his lawsuit and he believes that the Defendants were trying to punish him for vindicating his rights. However, "[t]o infer causation from the very fact that one activity preceded another, however, is insufficient here to adequately plead retaliatory intent." *Edwards v. Horn*, No. 10 CIV. 6194, 2012 WL 760172, at *17 (S.D.N.Y. Mar. 8, 2012). While temporal proximity may give rise to circumstantial evidence of causality, "the temporal proximity must be very close." *Breeden*, 532 U.S. at 273. Here, the timing of the adverse action is not sufficiently proximate to the protected activity. The discipline ticket was issued on April 4, 2022, more than three months after Dr. Brotz was added as a Defendant to the lawsuit and nearly 10 months after the lawsuit was originally filed in June 2021.

**C. Dorm Transfer**.

The transfer of a prisoner is not considered an adverse action unless it results in the prisoner being subjected to more onerous conditions. *See Coleman v. Sutton*, 530 F. Supp. 2d 451, 453

(W.D.N.Y.2008) (prisoner failed to state a retaliation claim where he did not allege that conditions into which he was transferred were more onerous than his original placement). Here, Plaintiff only alleges that he was moved from D4 to D3, but does not allege that he was subject to more onerous conditions in D3. Accordingly, this transfer that Plaintiff complains of is not an adverse action.

### D.  Cell Search.

The one instance that Plaintiff's cell was searched is not an adverse action. *See Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) ("allegations that [defendant] ordered or otherwise conducted two searches of plaintiff's cell and two searches of his person over a six-month period are insufficient to show adverse action."). Moreover, the contention that the search was ordered by Dr. Brotz is speculative as Plaintiff asserts nothing more than his suspicion of Dr. Brotz's involvement without any actual facts. Finally, in this claim, Plaintiff also asserts in speculative and conclusory fashion that he believes his legal papers were "potentially copied." ECF No. 52 at 24. Such allegations do not rise to the level of an adverse action because Plaintiff has not alleged that as a result of this search his "efforts to pursue a nonfrivolous claim" were frustrated. *Collins v. Goord*, 581 F. Supp. 2d 536, 573 (S.D.N.Y. 2008). On the contrary, Plaintiff could not plausibly allege that his efforts to pursue his claims have been frustrated because Plaintiff has multiple lawsuits pending before this Court and he frequently files voluminous letters to amend and litigate his allegations. The search of Plaintiff's cell was, therefore, not an adverse action.

### E.  Behavioral Contract.

Like the Inmate Counseling Notification, the Behavioral Contract did not place plaintiff in an active disciplinary process and therefore cannot constitute an adverse action. *See Stallworth*, No. 16CV03059, 2017 WL 4355897, at *19. The Behavioral Contract also suffers from the same temporal infirmities as the other alleged adverse actions—it was issued on June 6, 2022, six months

after Dr. Brotz was added to the lawsuit. Plaintiff also does not allege any other facts showing that the lawsuit was a substantial motivating factor in Dr. Brotz's choice to issue the Behavioral Contract. Rather, on the face of the Behavioral Contract, it was issued in the normal course as a part of his participation in the SOCTP. ECF No. 60-1 at 5 (*Dr. Brotz's Response to Behavior Contract Grievance*, "Behavioral Contracts, like other interventions, are designed to act as interventions; specifically, a way to assist participants in getting back on track when they are struggling in a particular area."). For these reasons, the Behavioral Contract was not an adverse action and was not causally related to Plaintiff's protected speech.

**F. Destroying Grievances**.

Plaintiff's allegation regarding grievances being destroyed is implausible on its face and frivolous. To support this claim, Plaintiff refers to the grievance he submitted regarding Dr. Brotz's disciplinary ticket relating to the assistance he provided to a fellow inmate to file a FOIL request. ECF No. 60-1 at 21. The relevant documentation related to this alleged adverse action shows that the disciplinary ticket at issue was resolved in Plaintiff's favor on April 5, 2022.[7] On April 14, 2022, Plaintiff was then notified that his grievance based on the disciplinary ticket was dismissed pursuant to Directive 440 Sections 701.5(b)(4)(i)(c)(4) and 701.3(e)(2) ("an individual decision or disposition resulting from a disciplinary proceeding…is not grievable"); ECF No. 52-6 at 29. Plaintiff appealed the dismissal on April 15, 2022, and the dismissal was upheld. ECF No. 52-6 at 31. Following the denial of his appeal, on April 18, 2022, Plaintiff filed a new grievance alleging that his grievance tickets were being improperly destroyed to protect Dr. Brotz. ECF No. 52-6 at 31. Plaintiff received a response to that grievance, which reiterated the reasons for dismissing the prior grievance. Plaintiff allegations are implausible on their face because he provides

---

[7] ECF No. 52-6 at 25.

documentation that shows that his grievances are not being destroyed at all, but instead are being responded to and addressed repeatedly pursuant to official prison grievance policy.

In sum, Plaintiff's allegations of retaliation are meritless and frivolous. The Inmate Counseling Notification, the Dorm Transfer, the Cell Search, the Behavioral Contract are not adverse actions. The alleged destruction of Plaintiff's grievance did not occur. While the disciplinary ticket may be considered an adverse action, Plaintiff fails to allege any facts that could form the basis of a reasonable inference of causation, other than stating his strong suspicion of causation. Without more, where, as here, the plaintiff alleges the ultimate fact of retaliation in a conclusory and speculative manner, he fails to state a claim for retaliation. *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)).

Because Plaintiff fails to allege any adverse action, other than the discipline ticket, but also fails to sufficiently allege a causal connection between the discipline ticket and his protected speech, Plaintiff has not sufficiently alleged a plausible claim of retaliation. Accordingly, Plaintiff's claims of retaliation are dismissed.

## V.     False Claims

Plaintiff argues that Defendants violated the New York False Claims Act ("NYFCA")[8] "when they created and used an unapproved document . . . to override Petitioner into moderate risk." ECF No. 60 at 13. Because this override resulted in a longer program duration, Plaintiff contends that Defendants did so intentionally in order to obtain more money from the government to pay for the longer program. ECF No. 52 at 23.

---

[8] Plaintiff does not specify whether he is relying on the federal FCA or the New York FCA, however, since the relevant government entity at issue is the State of New York Department of Corrections and Community Services which administers SOCTP, this Court has construed his claim under the New York FCA.

Because the NYFCA mirrors the federal False Claims Act ("FCA") in many respects, "it is appropriate to look toward federal law when interpreting the New York act." *United States v. Cath. Health Sys. of Long Island Inc.*, No. 12-CV-4425, 2017 WL 1239589, at *7 (E.D.N.Y. 2017). To state a claim under the federal FCA, the plaintiff must show "the defendants (1) made a claim, (2) to the government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *Coyne v. Amgen, Inc.*, 717 F. App'x 26, 28 (2d Cir. 2017) (summary order).

The statue NYFCA defines a "claim" as "any request or demand, whether under a contract or otherwise, for money or property . . . that is presented to an officer, employee, or agent of the state or a local government." NY State Fin Section 188(1). The override decision at the center of Plaintiff's NYFCA claim involved analyzing Plaintiff's criminal risk to reoffend and resulted in a determination of which SOCTP program was most suitable to address those risks. Placing Plaintiff in the moderate-risk program did not result in any direct payment from the government's treasury. Therefore, this decision did not involve "any request or demand . . . for money or property." *Id.* Because the decision did not involve a request or demand for money or property, this decision was not a "claim" as defined in the statute. Since Plaintiff fails to allege any facts that Defendants made a "claim" and could not plausibly do so based on the facts alleged in the complaint, Plaintiff's claim under the NYFCA must be dismissed.

## VI.   RICO

Plaintiff alleges that "Defendants colluded as an organization (DOCCS employees) and did it in a pattern over time (systemic overrides) and Petitioner (via money lost/used by his family/friends business led to losses) borne financial losses demonstrating RICO violation (by DOCCS Defendants/Employees)." ECF No. 52 at 32.

RICO provides a private cause of action for treble damages to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962 specifies the prohibited criminal activities. 18 U.S.C. § 1962(a)-(d). Each prohibited criminal activity requires alleging a "pattern of racketeering activity" or the "collection of unlawful debt." *Id.*

In order for a plaintiff to state a claim for damages under RICO, he must allege the violation of "criminal RICO," 18 U.S.C. § 1962. *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). In so doing, a plaintiff must allege the existence of seven constituent elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce." *Id.* (citing 18 U.S.C. § 1962(a)-(c)) (citations omitted).

Plaintiff's RICO claim misses the mark by many miles because he fails to allege a critical element of the criminal RICO violation—a pattern of "racketeering activity." Plaintiff's sole allegation of a predicate racketeering act that allegedly violated criminal RICO was Defendants decision to override his placement in the low-risk SOCTP and place him in the moderate-risk SOCTP. ECF No. 52 at 32. However, such an act does not fall within the statutory definition of a "racketeering activity," which requires that the act be indictable under an enumerated section of the United States Code or involve "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . . which is chargeable under State law. . ." *See generally*, 18 U.S.C. § 1961. A prison administrator's decision to override an inmate's placement in a treatment program is a far cry from any potential "racketeering activity." Further, Plaintiff also fails to sufficiently allege a "pattern." The override that he

complains of only once, and a "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C.A. § 1961.

Because Plaintiff fails to allege that Defendants have engaged in a pattern of racketeering activity, Plaintiff's RICO claim must be dismissed.

## VII.   CONSPIRACY

Plaintiff brings claims under both Sections 1985(3) and 1983 alleging that Defendants conspired to deprive him of his rights in two ways. First, he asserts that "(Defendants) engaged in conspiracy, collusion when they forced Petitioner to lie (provide untrue facts and admit to sexually offending behavior) in violation of his core and sincerely held religious beliefs." ECF No. 60 at 13. Next, he asserts that "they also engaged in a conspiracy when they deliberately, wrongly overrode Petitioner to Moderate (instead of risk) in systemic defraud of taxpayer funds." *Id.*

### A.  Section 1985 Conspiracy

A conspiracy claim under Section 1985(3) requires a plaintiff to allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n. 4 (2d Cir.2006)). The conspiracy must also be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007).

Critically, Plaintiff fails to allege a class-based animus that motivated Defendants in the acts that they took toward him. Plaintiff asserts that he is Hindu and sincerely holds a religious belief that he cannot lie. However, merely asserting membership a particular class is insufficient

to assert that Defendants were motivated by Plaintiff's membership in such class. *See Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) (Ruling that, although, plaintiff "who is black, is a member of a protected class" such assertion is not enough to "demonstrate that the officers selected their course of action because of his race.").

Because Plaintiff fails to allege that Defendants were motivated by a class-based discriminatory intent, Plaintiff's claim for conspiracy under Section 1985(3) must be dismissed.

### B. Section 1983 Conspiracy

To state a claim for Section 1983 conspiracy, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). A complaint that contains "only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights," or "diffuse and expansive allegations," is properly dismissed; to be viable, a complaint must allege "specific instances of misconduct." *Id.* at 325 (internal quotation marks omitted). A plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, *see Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005), but at the very least the pleadings must present "specific facts tending to show agreement and concerted action." *Bacquie v. City of New York*, No. 99CIV.10951, 2000 WL 1051904, at *1 (S.D.N.Y. July 31, 2000). Without "a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy." *Fisk*, 401 F. Supp. 2d at 376.

Here, Plaintiff's complaint contains "only conclusory, vague, or general allegations." *Id.* The facts in Plaintiff's complaint amount to allegations of independent acts by the various

Defendants. Respecting the override decision, Plaintiff states that it was "initiated by D-Brotz" and "approved by "D-Mcallister." ECF No. 52 at 15. However, Plaintiff also alleges that it was D-Brotz's role in administering the program to make a recommendation and D-Mcallister's role in administering the program to approve and deny D-Brotz's recommendation. *Id.* At no point does he allege a conversation or agreement between these two Defendants. Essentially, Plaintiff has merely alleged that the Defendants were independently executing the responsibilities of their respective roles within the prison administration. Respecting the alleged conspiracy to force Plaintiff to lie, he offers no facts whatsoever to support a claim of conspiracy.

Because Plaintiff fails to allege a meeting of the minds, his allegations respecting Defendants' independent acts do not amount to a conspiracy and his claim of a Section 1983 conspiracy is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint, ECF. No. 77, is GRANTED. Plaintiff's Amended Complaint, ECF No. 52, is DISMISSED in its entirety. Plaintiff's motion to refer this case to a magistrate judge, ECF No. 83, is DENIED as moot. The Clerk of Court is respectfully directed to enter judgment and close this case.

IT IS SO ORDERED.
Dated: June 15, 2023
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

22